IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WILLIAM J. COX, et al., | : | |
| Plaintiffs, | : | |
| vs. | : | CA 08-0315-KD-C |
| TRIAD ISOTOPES, INC., | : | |
| Defendant. | | |

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the removal petition (Doc. 1), the plaintiffs' motion to remand (Doc. 4), and the defendant's response in opposition to the remand motion (Doc. 10). Upon consideration of the foregoing pleadings, with attachments, the Magistrate Judge recommends that the Court **GRANT** the plaintiffs' motion to remand and **REMAND** this case to the Circuit Court of Mobile County, Alabama from whence it came.

## FINDINGS OF FACT

1. On April 23, 2008, plaintiffs filed a breach of contract action in the Circuit Court of Mobile County, Alabama against Triad Isotopes, Inc. (Doc. 1, COMPLAINT) The complaint avers that the individual plaintiff,

William J. Cox, is "an individual resident of the State of Florida[,]" and the owner of co-plaintiff, B. S. Management, Inc., "an Alabama corporation with its principal place of business in Mobile, Alabama." (*Id*. at ¶¶ 1 & 2) In addition, the complaint avers that defendant Triad is a Delaware corporation "with its principal place of business at 6010 Blakeford Drive, Windermere, Florida 34786." (*Id*. at ¶ 3) The complaint also reflects that following the defendant's acquisition of Cox's four nuclear pharmacies (two located in Florida, one in Mississippi, and one in Mobile) in 2006 Triad hired Cox as a Senior Vice President of Strategic Markets, with his primary work location being in Mobile. (*See id*. at ¶¶ 11 & 33)

2.      In its removal petition, filed June 6, 2008, defendant contends that removal is proper based on diversity of citizenship. (Doc. 1, at ¶ 4) More specifically, the removing defendant contends that William J. Cox is actually a citizen of Alabama and, therefore, all parties are diverse from one another for purposes of diversity jurisdiction. (*Id*. at ¶ 8)

        a.      It is clear from the facts concerning Cox's residence and activities in Mobile that he is, and intends to be, domiciled in Alabama. See Slate v. Shell Oil Co., 444 F.Supp.2d 1210, 1215 (S.D. Ala. 2006) (determination of a party's domicile is to be determined by the "totality of circumstances"). Cox and his wife resided in a home located near the Heron Lakes Country Club in Mobile, Alabama from 2002 through 2007. (See Mobile County Tax Records, attached hereto as

2

Exhibit "B".) In fall of 2007, Cox and his wife sold the Heron Lakes home, and purchased a home overlooking the Country Club of Mobile, located at 14 Turin Lane, Mobile, Alabama. As part of the Turin Lane purchase, Plaintiff Cox executed a Judgment and Lien Affidavit, dated October 15, 2007, that stated that he is "a resident citizen of Mobile County, Alabama." (Book-6286, p. 945, Mobile County Probate Court.)

      b.    Plaintiff Cox and his wife also have sponsored and engaged in various other community events and activities in Mobile within the past year. As part of these activities, they have stated publicly that Mobile "is our community." Further, Cox additionally acknowledges being the owner of B.S. Management which has its principal place of business in Mobile. (Complaint at ¶¶ 1-2.) Accordingly, although a condominium in Perdido Key, Escambia County, Florida, is identified as his and his spouse's "homestead" for the purposes of the Escambia County Property Appraiser, Cox's intent to be domiciled in Alabama is clear from the totality of activities in Mobile, Alabama. See Galva Foundry Co. Heiden, 924 F.2d 729, 730 (7th Cir. 1991) (the fact that a party claimed residence in Florida for tax purposes did not mean that he was domiciled there for diversity purposes).

(*Id.*)

      3.    The plaintiffs filed their motion to remand on June 18, 2008 and

contend therein that Cox is domiciled in Florida. (Doc. 4)

      1.    . . . I am a citizen of the State of Florida.

      .     .     .

      3.    My primary residence is in Perdido Key, Florida. Florida has been my primary residence for approximately eight years.

3

4.     I claim a "homestead" exemption on my primary residence in Perdido Key, Florida. I do not claim a "homestead" exemption in Alabama.

5.     I maintain household furnishings and clothes and pay utilities at my primary residence in Perdido Key, Florida.

6.     I maintain a telephone at my primary residence with a listed number in Perdido Key, Florida.

7.     I receive mail at my Perdido Key, Florida home.

8.     Jointly with my wife, I also own a secondary home in Mobile.

9.     I spend more than half my time in Florida.

10.     I have started several business located in Florida, Alabama and Mississippi.

11.     My primary source of income is from leasing a business in Florida and rental income from real estate in Florida, including real estate I own in Panama City and Pensacola, Florida, along with certain rental property located in Alabama and Mississippi.

12.     My cars are registered in Florida and have Florida license plates.

13.     My driver's license is a Florida license, and has been for approximately eight years.

14.     I am registered to vote in Florida, and have been for approximately eight years.

15.     I consider Florida as my permanent home and primary residence.

(Doc. 4, Declaration of William J. Cox, at ¶¶ 1 & 3-15)

4.      In opposition to the motion to remand, defendant contends that
under the totality of circumstances standard Cox was domiciled in Alabama in
the spring of 2008. (*See* Doc. 10) Defendant has attached to its response a
warranty deed dated October 15, 2007, memorializing the sale by Thomas and
Mary Martin to William Cox and his wife, Tammy, a house at 14 Turnin Lane
in Mobile. (Doc. 10, Exhibit A)[1] The face of the deed reflects the address of
the grantees, the Coxes, as being 17287 Perdido Key Drive #804, Pensacola,
Florida 32507. (*Id.*)   Tax records from the Mobile County Revenue
Commission appear to indicate that this residence is a second home. (Doc. 10,
Exhibit A, Assessment Data)

5.      On November 5, 2007, Cox e-mailed Lynda Anderson, the
Controller and Chief Accounting Officer of Triad Isotopes, Inc., and requested
that she forward all of his paychecks to his new address: 14 Turnin Lane,
Mobile, Alabama 36608. (Doc. 10, Exhibit B)

6.      Defendant has also attached to its response in opposition to the
motion to remand certain records from the offices of the Escambia County,

---

[1]      On December 9, 2002, the Coxes purchased a home at 1062 Grand Heron Court
West in Mobile, Alabama near the Heron Lakes Country Club. (Doc. 1, Exhibit B) The property
description contained on tax records from the Mobile County Revenue Commission reflects that
this was a second home. (*See id.*)

Florida Property Appraiser and the Bay County, Florida Property Appraiser. (Doc. 10, Exhibits C-F) As represented by the defendant, all of these records identify Cox's contact information as being 551 East Barksdale Drive in Mobile, Alabama. (*Id.*) The records with respect to Cox's Spanish Key Condo also reflect, however, that Cox claimed a homestead exemption with respect to this piece of property in 2007. (Doc. 10, Exhibit C)

## CONCLUSIONS OF LAW

1.    "Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.,* 204 F.3d 1069 (11th Cir. 2000).  Federal courts may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.  28 U.S.C. § 1332(a)(1).  However, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *University of South Alabama v. American Tobacco Co.,* 168 F.3d 405, 411

(11th Cir. 1999).

2.      "[T]he party invoking the court's jurisdiction bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002); *see also Triggs v. John Crump Toyota, Inc*., 154 F.3d 1284, 1287 n.4 (11th Cir. 1998) (citation omitted) ("[T]he removing party bears the burden of demonstrating federal jurisdiction."); *Tapscott, supra* ("A removing defendant has the burden of proving the existence of federal jurisdiction."). Therefore, in this case, the burden is on Triad Isotopes, Inc., to establish complete diversity, that is, each plaintiff is diverse from the defendant, *Triggs, supra*, 154 F.3d at 1287 (citation omitted), and, in addition, to establish by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *Tapscott, supra*, 77 F.3d at 1357 ("[W]e hold where a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $50,000 jurisdictional requirement.").

3.      Because there is no question that the $75,000 jurisdictional requirement has been satisfied (Doc. 1, COMPLAINT, at ¶¶ 31 & 43

("Plaintiffs have sent Triad invoices for the amounts that Triad owes, which Triad has refused to pay. Triad owes Plaintiffs in excess of $50,000 in unpaid fees pursuant to the Delivery Agreement, including interest. . . . Triad owes Mr. Cox in excess of $359,000 in acquisition commissions, and Triad has affirmed its obligation to pay these acquisition commissions to Mr. Cox."), the only issue is whether the citizenship of each plaintiff is diverse from the defendant's citizenship. In this regard, "'citizenship' means 'domicile.'" *Audi Performance & Racing, LLC v. Kasberger*, 273 F.Supp.2d 1220, 1226 (M.D. Ala. 2003); *see also McCormick, supra*, 293 F.3d at 1257 ("Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction."); *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.) ("For diversity purposes, citizenship means domicile; mere residence in the State is not sufficient."),[2] *cert. denied,* 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1974), and, therefore, "the burden on the question of [Cox's] domicile rests with defendant[] because it is [Triad] who seek[s] the federal forum." *Slate, supra*, 444 F.Supp.2d at 1216 (citations omitted); *see also Mas, supra*, 489 F.2d at 1399 ("The burden of pleading the

---

[2]     "[A] critical distinction emerges between residence and domicile. As a matter of law, a person residing in a particular state is not necessarily domiciled there, and therefore is not necessarily a citizen of that state. That said, while the two concepts are analytically distinct, a party's place of residence is *prima facie* evidence of his domicile." *Slate v. Shell Oil Co.,* 444 F.Supp.2d 1210, 1215 n.9 (S.D. Ala. 2006) (citations omitted).

diverse citizenship is upon the party invoking federal jurisdiction . . . and if the
diversity jurisdiction is properly challenged, that party also bears the burden
of proof.").[3]

4.      "A person's domicile is the place of 'his true, fixed, and
permanent home and principal establishment, and to which he has the intention
of returning whenever he is absent therefrom[.]'" *Mas, supra,* 489 F.2d at 1399
(citations omitted).

> Determination of a party's domicile requires a "totality
> of the circumstances" approach weighing a constellation of
> objective facts, no single one of which is entitled to controlling
> weight. Among the numerous indicia considered are the state(s)
> where civil and political rights are exercised, where taxes are
> paid, where real and personal property are located, where
> driver's and other licenses are obtained, where mail is received,
> where telephone numbers are maintained and listed, where bank
> accounts are maintained, where places of business or
> employment are located, and where memberships in local
> professional, civil, religious or social organizations are
> established. In addition to these objective criteria, the domicile
> inquiry also considers a party's subjective statements of intent,
> although such representations are not dispositive.

*Slate, supra*, 444 F.Supp.2d at 1215 (internal citations and footnotes omitted).

5.      Prior to considering whether Triad has established, by a
preponderance of the evidence, that Cox is domiciled in Alabama and,

---

[3]      Decisions of the former Fifth Circuit handed down prior to September 30, 1981,
are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209
(11th Cir. 1981) (en banc).

9

therefore, is a citizen of this state, the undersigned addresses again its decision to deny the defendant's request for jurisdictional discovery since this Court, in the recent past, has allowed jurisdictional discovery with respect to the domicile of a party. *Slate, supra*, 444 F.Supp.2d at 1212 ("The parties having completed jurisdictional discovery as to the domicile of defendant James R. Blanton, and the parties having supplemented the record with memoranda and exhibits documenting the fruits of such discovery, the Motion [to Remand] is now ripe for disposition."). The *Slate* opinion was entered some nine and one-half months prior to the Eleventh Circuit's decision in *Lowery v. Alabama Power Co.,* 483 F.3d 1184 (2007), *cert. denied sub nom. Hanna Steel Corp. v. Lowery*, ___ U.S. ___, 128 S.Ct. 2877, ___ L.Ed.2d ___ (2008), and, therefore, this Court had no occasion to decide what impact *Lowery* presents with respect to jurisdictional discovery. As the undersigned previously noted by order dated June 25, 2008 (Doc. 9), *Lowery* can be read in no other manner than to disallow "[p]ost-removal discovery for the purpose of establishing jurisdiction in diversity cases[.]" 483 F.3d at 1215. While there can be no doubt that the focus in *Lowery* was the amount in controversy requirement contained in the diversity statute, *see, e.g., id.* at 1217 ("Though the defendant in a diversity case, unlike the plaintiff, may have no actual knowledge of the value of the

10

claims, the defendant is not excused from the duty to show by fact, and not mere conclusory allegation, that federal jurisdiction exists."), given the language used by the Eleventh Circuit it is also clear that the court was not limiting its holding to that specific requirement, *id.* at 1215 n.71 ("Our holding here is limited to diversity cases."); *see also id.* at 1217 ("[A] defendant that files a notice of removal prior to receiving clear evidence that the action satisfies the jurisdictional requirements, and then later faces a motion to remand, is in the same position as a plaintiff in an original action facing a motion to dismiss. The court should not reserve a ruling on a motion to remand in order to allow the defendant to discover the potential factual basis of jurisdiction. Such fishing expeditions would clog the federal judicial machinery, frustrating the limited nature of federal jurisdiction by encouraging defendants to remove, at best, prematurely, and at worst, in cases in which they will never be able to establish jurisdiction.").

> Post-removal discovery for the purpose of establishing jurisdiction in diversity cases cannot be squared with the delicate balance struck by Federal Rules of Civil Procedure 8(a) and 11 and the policy and assumptions that flow from and underlie them. Certainly, the power to grant discovery generally is conferred to the sound discretion of the district court, and post-removal jurisdictional discovery may appear to present a viable option for a court examining its jurisdiction. Jurisdictional discovery could avoid the problem of speculation by the court. Sound policy and notions of judicial economy and

fairness, however, dictate that we not follow this course.

.        .        .

> Post-removal discovery disrupts the careful assignment of burdens and the delicate balance struck by the underlying rules. A district court should not insert itself into the fray by granting leave for the defendant to conduct discovery or by engaging in its own discovery. Doing so impermissibly lightens the defendant's burden of establishing jurisdiction. A court should not participate in a one-sided subversion of the rules. The proper course is remand.

*Id.* at 1215-1216 & 1218.

6.      In line with *Lowery*, therefore, this Court must "review the propriety of removal on the basis of the removing documents." 483 F.3d at 1211; *see also id.* at 1213 ("[U]nder § 1446(b), in assessing the propriety of removal, the court considers the document received by the defendant from the plaintiff-be it the initial complaint or a later received paper-and determines whether that document and the notice of removal unambiguously establish federal jurisdiction."). Looking solely at the removing documents, that is, the petition for removal, with attachments, including the complaint, this Court simply cannot find that Triad has established by a preponderance of the evidence that Cox was domiciled in Alabama in the spring of 2008 when he, and his corporate co-plaintiff, filed suit in the Circuit Court of Mobile County,

12

Alabama. Certainly, Cox does not state on the face of the complaint that he is domiciled in Alabama nor is that fact readily deducible from the removing documents. While it is apparent that Cox and his wife purchased a house in Mobile in 2002 and a different house in 2007, the tax records for the home they purchased in 2002 identify same as a second home and defendant readily admits that the Coxes claim a homestead exemption for their Perdido Key condominium in Escambia County, Florida, rather than either Mobile house. (*See* Doc. 1, at ¶ 8.a. & 8.b.) On its face, this evidence amounts to a "wash" for jurisdictional purposes. In addition, the defendant's other "evidence" of the individual plaintiff's domicile in Alabama, including his ownership of his co-plaintiff Alabama corporation and Cox's alleged statements that Mobile is "'[his community[,]'" does not satisfy the defendant's preponderance of the evidence burden in the face of plaintiff's unequivocal and sworn statement in the complaint that he is "an individual resident of the State of Florida[]" (Doc. 1, COMPLAINT, at ¶ 1). *See Lowery, supra,* 483 F.3d at 1216 ("The plaintiff's factual allegations are subject to Rule 11's command-under pain of sanctions-that the 'allegations and other factual contentions have, [or are likely to have following discovery,] evidentiary support[.]'"). Finally, the undersigned views Triad's request for discovery (Doc. 8) as "tantamount to an

13

admission that the defendant[] do[es] not have a factual basis for believing that jurisdiction exists." *Lowery, supra*, 483 F.3d at 1217. As noted by the Eleventh Circuit, "[t]he natural consequence of such an admission is remand to state court." *Id*. at 1217-1218.

7.    Although the undersigned believes that *Lowery* prohibits this Court from considering any documents (or evidence) other than the removing documents, a consideration of the other evidence supplied the Court by the parties fails to render a different result. This is because the indicia that Cox is domiciled in Alabama supplied by Triad is countered by indicia supplied by Cox himself that he is domiciled in Florida, that is, that Florida is the place he has the intention of returning whenever he is absent therefrom. The defendant cannot refute Cox's declaration statements that he has a Florida driver's license, he votes in Florida, his cars are registered in Florida and have Florida license plates, he owns real estate in Panama City and Pensacola, Florida, he receives mail at his Perdido Key condominium, he pays utilities for his Perdido Key condominium and maintains household furnishings and clothes there, he maintains a listed telephone number for this condominium, and he claims a homestead exemption on this condominium.  The defendant's evidence that Cox, since 2002, has owned two different houses in Mobile, and listed on

14

appraisal documentation relative to his Florida properties contact information at 551 East Barksdale Drive in Mobile, Alabama, etc., at best balances the domiciliary scales. This evidence simply does not satisfy Triad's burden of proving by a preponderance of the evidence that Cox was domiciled in Alabama in the spring of 2008. Again, therefore, remand is the proper course.

<u>**CONCLUSION**</u>

Based upon the foregoing, the Magistrate Judge **RECOMMENDS** that the Court **GRANT** the plaintiffs' motion to remand (Doc. 4) and **REMAND** this case to the Circuit Court of Mobile County, Alabama.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 21st day of July, 2008.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

15

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

   s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE